UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 3:21-CR-531-B |
| | § | |
| EDGAR ALEJANDRO | § | |
| ESCOBEDO-GOMEZ, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Edgar Alejandro Escobedo-Gomez's Motion to Dismiss the Indictment (Doc. 27). For the following reasons, the Court **DENIES** the Motion.

### I.

### BACKGROUND

This is an immigration case. The Government accuses Escobedo-Gomez of illegally re-entering the United States after previously being removed, in violation of 8 U.S.C. § 1326(a). Doc. 1, Indictment. Escobedo-Gomez is a Mexican national who has been ordered to leave the United States on two prior occasions. Doc. 30-5, Ex. 5; Doc. 30-10, Ex. 10. On September 19, 2018, Escobedo-Gomez was granted voluntary departure to Mexico—he was ordered to leave the United States on or before October 19, 2018. Doc. 30-5, Ex. 5. However, Escobedo-Gomez did not leave the United States by this date and was subsequently arrested for an unrelated crime. Doc. 30-6, Ex. 6. Following this arrest, an Immigration Judge changed Escobedo-Gomez's deadline for voluntary departure to January 25, 2019. Doc. 30-7, Ex.7 After this ruling, Escobedo-Gomez timely left the United States. *Id.*

-1-

He then returned to the United States on June 15, 2019, without receiving authorization from an immigration officer. Doc. 30-3, Ex. 3, 1. Three days later, Escobedo-Gomez was arrested by Border Patrol agents. *Id.* at 3. He was subsequently convicted of violating 8 U.S.C. § 1325(a)(1)—Improper Entry by Alien. Doc. 30-9, Ex. 9, 1. After this conviction, Escobedo-Gomez was subjected to expedited removal proceedings under 8 U.S.C. § 1225(b)(1)(A)(i) of the Immigration and Nationality Act ("INA"). Doc. 30-10, Ex. 10, 1. On August 31, 2021, Escobedo-Gomez was found in a Dallas County jail, Doc. 30-12, Ex. 12, 1, and the Government subsequently charged him with Illegal Reentry After Removal. Doc. 1, Indictment. He moves to dismiss the Indictment by bringing a collateral attack on his June 2019 removal proceedings, arguing that he was improperly subjected to expedited removal in 2019. Doc. 27, Mot., 2–3. The Court considers the Motion below.

## II.

## LEGAL STANDARDS

A.   *Federal Rule of Criminal Procedure 12(b)(3)(B)(v)*

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), defendants can move to dismiss their indictments for "failure to state an offense." District courts may only dismiss an indictment if "the infirmity in the prosecution is essentially one of law." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citation omitted). When reviewing a motion to dismiss an indictment for failure to state an offense, "the court . . . take[s] the allegations of the indictment as true . . . to determine whether an offense has been stated." *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998) (citation omitted).

B.      *Expedited Removal Proceedings*

8 U.S.C. § 1225(b)(1)(A) outlines the requirements in which an alien may be subjected to expedited removal proceedings. First, expedited removal is improper if the alien has been "admitted or paroled into the United States" or "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).[1] Second, as relevant here, the alien must be "inadmissible under . . . [§] 1182(a)(7)." *Id.* § 1225(b)(1)(A)(i). Section 1182(a)(7), in turn, dictates that any alien is inadmissible if they do not possess valid entry documents "at the time of application for admission." *Id.* § 1182(a)(7)(A)(i)(I). In sum, an alien can be subjected to expedited removal proceedings if they: (1) have not been admitted into the United States; (2) have not been physically present in the United States for two years; and (3) do not possess any valid entry documents "at the time of application for admission." *See id.* §§ 1182(a)(7)(A)(i)(I), 1225(b)(1)(A)(i), (iii)(II).

C.      *Collateral Attacks on Underlying Deportation Orders*

When bringing a collateral attack on the underlying deportation order, defendants are required to establish: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Additionally, criminal defendants must further show that the previous immigration proceedings caused actual prejudice, meaning there must have been "a reasonable likelihood that but for the errors complained of the defendant would

---

[1] This provision of the INA is only relevant if, as here, the alien is not one "who is arriving in the United States" at the time they are inspected by immigration officers. *See* 8 U.S.C. § 1225 (b)(1)(A)(i).

not have been deported." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658–59 (5th Cir. 1999) (citations omitted).

## III.

## ANALYSIS

Escobedo-Gomez was properly subjected to expedited removal proceedings in June 2019 because he did not possess any valid entry documents at the time of his application for admission into the United States. Therefore, the expedited removal was not fundamentally unfair as required to successfully bring a collateral attack. The Court first addresses whether it has jurisdiction to decide this Motion.

A.      *The Court Has Jurisdiction to Decide This Motion.*

While neither the Government nor Escobedo-Gomez raises this issue, the Court first addresses whether it has jurisdiction to hear collateral attacks of this nature. *See Burciaga v. Deutsche Bank Nat'l Trust Co.*, 871 F.3d 380, 384 n.4 (5th Cir. 2017) ("[T]his court is duty-bound to examine its subject-matter jurisdiction sua sponte."). Section 1225(b)(1)(D) states that, when a defendant is being prosecuted for illegal reentry, "the court shall not have jurisdiction" to hear any collateral attacks challenging a prior expedited removal under § 1225(b)(1)(A)(i). 8 U.S.C. § 1225(b)(1)(D). Here, Escobedo-Gomez is being prosecuted for illegal reentry and is challenging his prior expedited removal, Doc. 1, Indictment, which suggests that Congress deprived the Court of the power to decide this Motion. *See* 8 U.S.C. § 1225(b)(1)(D). But such an interpretation would potentially violate a criminal defendant's constitutional due process rights because it would deprive district courts of all power to review a previous removal when the previous removal is an element of the underlying criminal offense. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 838–39 (1987).

However, the Fifth Circuit has explained that § 1225(b)(1)(D) does not deprive district courts of jurisdiction to review collateral attacks of previous expedited removals when a defendant fails to show that the expedited removal was fundamentally unfair. *United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000); *see also United States v. Sanchez-Cervantes*, No. SA-12-CR-4 1-XR, 2012 WL 1313315, at *3 (W.D. Tex. Apr. 17, 2012). Because Escobedo-Gomez's expedited removal was not fundamentally unfair, the Court has jurisdiction to decide this Motion. *See Lopez-Vasquez*, 227 F.3d at 486.

B.   *Escobedo-Gomez's Expedited Removal Was Not Fundamentally Unfair.*

The Government concedes that Escobedo-Gomez satisfied the first two elements of a collateral attack on a prior removal, so the only question for the Court to decide is whether it was fundamentally unfair for Escobedo-Gomez to be subjected to expedited removal proceedings in June 2019. Doc. 30, Resp., 4 n.4. This question ultimately comes down to a matter of statutory interpretation: whether Escobedo-Gomez submitted an "application for admission" under § 1182(a)(7) when he entered the United States on June 15, 2019. The Court concludes that he did.

As discussed above, an alien is eligible for expedited removal proceedings when they do not possess any valid entry document "at the time of application for admission." 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1225(b)(1)(A)(i). As a preliminary matter, the INA defines "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Additionally, "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). An "application for admission" is referenced to as "the application for

admission into the United States," but the INA does not otherwise specify what is required for an alien to submit such an application. *See id.* § 1101(a)(4).

The Court holds that an alien submits a constructive "application for admission" when they engage in the conduct that renders them an "applicant for admission" under the INA. Escobedo-Gomez makes no argument that he was not an applicant for admission. *See generally* Doc. 27, Mot. Instead, he argues that because he never formally applied for lawful entry, he was not inadmissible under § 1182(a)(7). *See* Doc. 27, Mot., 4. Escobedo-Gomez, thus, argues that an alien only submits an application for admission by "applying for lawful entry" into the United States. *Id.* In essence, Escobedo-Gomez is arguing for an interpretation of the INA that would result in him being classified as an "applicant for admission" without ever having submitted an "application for admission." The Court rejects this interpretation by referring to both the structure of the statute and the plain meaning of its terms.

The Court looks to the INA's definition of an "applicant for admission" to help determine what constitutes an "application for admission." *See Ramos-Portillo v. Barr*, 919 F.3d 955, 960 (5th Cir. 2019) ("The meaning of a statutory provision is 'often clarified by the remainder of the statutory scheme.'" (quoting *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014))). Importantly, an alien need not file a formal application to legally enter the United States to become an "applicant for admission." Instead, as relevant here, an alien becomes an "applicant for admission" when they engage in specific *conduct*—entering the United States, or being present in the United States, without first being authorized to enter the country by an immigration officer. 8 U.S.C. § 1225(a)(1). The Court interprets "application for admission" to, therefore, refer to the specific conduct that results in an alien becoming an "applicant for admission" under the INA. Escobedo-Gomez became an

"applicant for admission" when he re-entered the United States on June 15, 2019, because he had not been admitted to the United States. *See id.* § 1225(a)(1), (3); Doc. 27-1, Ex. 1, 1. Therefore, the Court holds that Escobedo-Gomez submitted a constructive "application for admission" by engaging in the conduct that renders an alien an "applicant for admission."

This interpretation is also consistent with decisions from other courts. In *Sanchez v. Lynch*, 670 F. App'x 860 (5th Cir. 2016) (per curiam), the Fifth Circuit ruled that an alien was inadmissible because "he lacked proper entry documents at the time of his constructive application for admission," which was when he entered the United States without inspection. Additionally, another court in this district addressed this very issue and determined that an alien made an application for admission by entering the United States "whether or not the alien presented for immigration inspection or made a formal application for admission." *United States v. Ortiz-Flores*, No. 3:22-CR-00140-L, 2023 WL 4634761, at *4 (N.D. Tex. July 19, 2023) (Lindsay, J.).

The Court is unpersuaded by the several cases Escobedo-Gomez cites to support his proposed interpretation of the INA's requirements for expedited removal. For example, he cites *Marques v. Lynch*, 834 F.3d 549, 555–56 (5th Cir. 2016), where the Fifth Circuit held that an alien applying for an adjustment of their immigration status did not constitute an "application for admission." Doc. 27, Mot. 4. However, *Marques* is distinguishable. There, the Fifth Circuit was not addressing whether an alien submitted an application for admission by entering the United States; instead, the Fifth Circuit simply held that applying for an adjustment of immigration status after previously being lawfully admitted did not constitute an application for admission. *See Marques*, 834 F.3d at 555–56. Here, in contrast, Escobedo-Gomez entered the United States without first receiving authorization

from an immigration officer and was not simply applying to change his immigration status. *See* Doc. 30-3, Ex., 3, 3. Therefore, the holding in *Marques* does not support Escobedo-Gomez's Motion.

The Court is also not persuaded by the decision in *United States v. Mayren*, 591 F. Supp. 3d 692 (C.D. Cal. 2022). There, the district court held that an alien who entered the United States without inspection was not eligible for expedited removal proceedings because he never formally applied to enter the United States. *Id.* at 697. However, it is unclear whether the *Mayren* decision remains good law as the Ninth Circuit recently affirmed a district court denying a motion to dismiss an indictment under the same circumstances presented here. *United States v. Gambino-Ruiz*, 91 F.4th 981, 988 (9th Cir. 2024) (rejecting the defendant's argument that he never submitted an "application for admission" and holding that the defendant submitted a "constructive application" when he crossed the United States and Mexico border). In any event, the Court is not bound by the *Mayren* decision and ultimately disagrees with the *Mayren* court's interpretation of the relevant INA provisions for the reasons discussed previously.

In sum, Escobedo-Gomez is an applicant for admission; therefore, he submitted a constructive application for admission. And, assuming the facts in the Indictment to be true, because Escobedo-Gomez did not possess the necessary entry documents at the time of his application for admission, *see* Doc. 30-3, Ex. 3, 3, he was properly subjected to expedited removal proceedings pursuant to § 1225(b)(1)(A)(i). Therefore, Escobedo-Gomez cannot show that his expedited removal in 2019 was fundamentally unfair. *See* 8 U.S.C. § 1326(d)(3).

IV.

CONCLUSION

For the reasons discussed above, the Court **DENIES** Escobedo-Gomez's Motion to Dismiss the Indictment (Doc. 27).

**SO ORDERED.**

**SIGNED: April 4, 2024.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE