UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| | § |
| v. | §  CIVIL ACTION NO. 3:21-CR-0531-B |
| | § |
| EDGAR ALEJANDRO | § |
| ESCOBEDO-GOMEZ, | § |
| | § |
| Defendant. | § |

**MEMORANDUM ORDER & OPINION**

Before the Court is Defendant Edgar Alejandro Escobedo-Gomez's Motion to Suppress (Doc. 46). For the reasons stated below, the Court **DENIES** the Motion.

**I.**

**BACKGROUND**

This is an immigration case. The Government accuses Escobedo-Gomez of violating 8 U.S.C. § 1326(a) by illegally reentering the United States after previously being removed. Doc. 1, Indictment. Escobedo-Gomez is a Mexican national who was found in Dallas County Jail on August 31, 2021, after being ordered to leave the United States in 2019. Doc. 30-12, Ex. 12, 1. Escobedo-Gomez moves to suppress the statements he made in his 2019 encounter with Border Patrol that led to his 2019 removal. Doc. 46, Mot., 4. The details of that encounter, as recorded in Form I-213 (Doc. 46-1), are as follows.

On June 18, 2019, sometime after 1:30 A.M., two Border Patrol Agents ("BPAs") found Escobedo-Gomez and five others hiding in thick brush near Van Horn, Texas. Doc. 46-1, Ex. 1, 3. The agents identified themselves as BPAs. *Id.* One of the agents, Arturo Carrillo, asked Escobedo-Gomez questions about his citizenship and his presence in the United States. *Id.* Escobedo-Gomez responded

that he was a citizen of Mexico, he had entered the United States illegally by crossing the Rio Grande River, and he knew he had entered illegally. *Id.* Then, around 2:30 A.M., Escobedo-Gomez and his companions were arrested for illegal entry and taken to the Van Horn Border Patrol Station for processing. *Id.* He was not questioned while in transit to the station. *Id.*

After Escobedo-Gomez arrived at the station, another BPA, Erika Gonzalez, read him his *Miranda* rights from Form I-214, which contained a Spanish translation. *Id.*; *see* Doc. 46-2, Ex. 2, 1. Escobedo-Gomez waived his *Miranda* rights by signing Form I-214. *See* Doc. 46-2, Ex. 2, 1.

Escobedo-Gomez was read the Form I-867A statement of rights regarding immigration. Doc. 46-1, Ex. 1, 4. BPA Diana Martinez[1] interviewed him and recorded his statement in Form I-867A. Doc. 46-3, Ex. 3, 1–2. In the interview, he said he entered the United States on June 15, 2019. *Id.* at 2.

On November 22, 2019, Escobedo-Gomez was deported under a June 18, 2019 expedited removal order. Doc. 30-12, Ex. 12, 1–2. When he was found in Dallas County Jail on August 31, 2021, *id.*, the Government charged him with Illegal Reentry After Removal under § 1326(a). Doc. 1, Indictment. He moved to dismiss the indictment by collaterally attacking his June 2019 removal. Doc. 27, Mot. Dismiss. The Court denied his Motion. *See* Doc. 41, Mem. Op. & Order. He now moves to suppress statements he made in the 2019 encounter related to his 2019 removal. Doc. 46. The Court considers his Motion below.

## II.

## LEGAL STANDARD

A.   *The Fifth Amendment and the Exclusionary Rule*

The Fifth Amendment prohibits compelled self-incrimination. U.S. CONST. amend. V. To

---

[1] "Martinez" is the agent's maiden name. By the time of the suppression hearing, she had taken a married name. The Court refers to her as Agent Martinez here because she is recorded in the relevant documents as such.

protect this right, before an individual in custody can be interrogated, "[h]e must be warned . . . that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to" counsel, "and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "*Miranda* mandates a rule of exclusion." *Chavez v. Martinez*, 538 U.S. 760, 790 (2003). Therefore, unwarned custodial statements "are not admissible in court." *United States v. Webb*, 755 F.2d 382, 391 (5th Cir. 1985) (citations omitted).

B.     *Motions to Suppress*

In a motion to suppress, "the defendant bears the burden of demonstrating that statements which the defendant seeks to suppress were made while the defendant was under custodial interrogation." *Webb*, 755 F.2d at 390.

## III.

## ANALYSIS

The Court denies Escobedo-Gomez's Motion to Suppress on three grounds. First, Escobedo-Gomez was not in custody when he first spoke to the agents. Second, he received his *Miranda* warnings before he gave his interview. Finally, the *Miranda* warning in Form I-214 is not insufficient.

A.     *Escobedo-Gomez Was Not "In Custody" When He Gave His Initial Statement to the Agents.*

Escobedo-Gomez was not in custody when the agents first questioned him. There is no evidence to the contrary. Thus, his initial statements to the agents are not inadmissible. "*Miranda* warnings must be administered prior to custodial interrogation." *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). A suspect is "in custody" for the purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on

freedom of movement of the degree which the law associates with formal arrest." *Id.* at 596. "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015). "The requisite restraint on freedom is greater than that required in the Fourth Amendment seizure context." *Id.* (citing *Bengivenga*, 845 F.2d at 598). "[C]ustody arises only if the restraint on freedom is . . . [to] the degree associated with formal arrest." *Id.* (quoting *Bengivenga*, 845 F.2d at 598).

"Whether a suspect is 'in custody' is an objective inquiry that depends on the 'totality of the circumstances.'" *United States v. Ortiz*, 781 F.3d 221, 229 (5th Cir. 2015) (quoting *Wright*, 777 F.3d at 774–75). "The subjective views harbored by either the interrogating officers or the person being questioned are irrelevant." *Id.* Whether a suspect is in custody depends on "(1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave." *United States v. Nelson*, 990 F.3d 947, 955 (5th Cir. 2021). No one factor is determinative. *Wright*, 777 F.3d at 775.

Escobedo-Gomez had not been formally arrested when he was questioned in the bushes before receiving *Miranda* warnings, and the circumstances do not show he was otherwise in custody. First, the length of the questioning suggests Escobedo-Gomez was not in custody. "[A] thirty-minute interview suggests that a suspect was *not* in custody." *United States v. Coulter*, 41 F.4th 451, 459 (5th Cir. 2022) (emphasis in original) (quotations omitted). Agent Carrillo testified that he likely found Escobedo-Gomez in the bushes around 2:00 A.M. And Escobedo-Gomez was taken to the station at 2:30 A.M., so the questioning was likely only 30 minutes. Doc. 46-1, Ex. 1, 3. This encounter was thus too short

for a reasonable person to equate it with a formal arrest. *See Wright*, 777 F.3d at 774.

Second, the location of the questioning narrowly weighs against custody. Questioning in public settings is unlikely to be custodial because the public nature reduces the risk of coercion. *Coulter*, 41 F.4th at 459. For example, a location visible to others driving on a highway has been held sufficiently public to weigh against a custody finding. *See Nelson*, 990 F.3d at 955. Agent Carrillo testified that the encounter was in the desert, near a dirt road, and about six to eight miles from the Van Horn station, where Escobedo-Gomez was transported by a vehicle. While the location was less public than the side of a heavily traveled highway, it was more public than an enclosed interview room, which has been held non-custodial. *See Sorto v. Davis*, 672 F. App'x 342, 348 (5th Cir. 2016); *see also Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). Therefore, this factor narrowly weighs against custody.

Third, the questioning was non-accusatory. Questioning is non-accusatory when officers begin with neutral questions and only ask potentially incriminating questions after they learn incriminating information. *See Coulter*, 41 F.4th at 459. For example, in *Coulter*, an officer conducting a search first asked a defendant whether he had any guns. 41 F.4th at 459. Though he was later convicted of being a felon in possession of a firearm, the question was non-accusatory because the officer did not know the defendant was a felon. *Id.* And the officer asked about his criminal record only after the defendant "admitted that he was on parole for aggravated robbery." *Id.* The officer then asked again if he had guns. *Id.* Here, Agent Carrillo testified that when searching for people, as he was when he found Escobedo-Gomez, he looks for those in distress or in the United States without documentation. He testified he first identified himself as a BPA, then asked if everyone was okay, noting people are sometimes injured or in danger when found in the desert. Then, he asked if Escobedo-Gomez was a citizen of Mexico. Doc. 46-1, Ex. 1, 3. Only upon learning that Escobedo-Gomez was a Mexican citizen did Agent Carrillo ask if he had documentation allowing him to be here. And only upon Escobedo-

Gomez's negative response did Agent Carrillo ask more detailed questions about how he entered the United States and whether he did so illegally. *See id.* Thus, as in *Coulter*, the questioning began broadly and only involved potentially incriminating questions after the BPAs learned incriminating information. *See* 41 F.4th at 459. There is no evidence to the contrary, so the Court concludes it was non-accusatory.

Fourth, there was no restraint on Escobedo-Gomez's physical movement, so this factor suggests he was not in custody. While even "brief handcuffing" is not *per se* custodial, Agent Carrillo testified that Escobedo-Gomez was not in handcuffs at the time of questioning. *Coulter*, 41 F.4th at 460; *see also United States v. Ortiz*, 781 F.3d 221, 232 (5th Cir. 2015). The Court found his testimony credible. Agent Carrillo also testified he started questioning Escobedo-Gomez and the others as a group once they were out of the brush, suggesting their movement was not constrained by their surroundings. And while the Fifth Circuit has found that even six to eight armed agents escorting one defendant from one place to another does not necessarily constitute custody, here, Escobedo-Gomez did not offer any evidence that he was moved at all during the encounter. *See United States v. Michalik*, 5 F.4th 583, 588–89 (5th Cir. 2021). And here, only two agents were present during questioning, while Escobedo-Gomez was in a group of six people.

Fifth, the agents' statements regarding Escobedo-Gomez's freedom to move, however, suggest he was in custody. After identifying himself as a BPA, Agent Carrillo testified he instructed Escobedo-Gomez and the others present not to move for everyone's safety. But since no factor is determinative, this statement alone does not render Escobedo-Gomez in custody. *See Wright*, 777 F.3d at 775.

Though Agent Carrillo testified that Escobedo-Gomez was not free to leave, *Miranda* does not consider the agent's subjective intentions in determining custody. *Ortiz*, 781 F.3d at 229. Moreover, while showing that a reasonable person would not feel free to leave establishes a Fourth Amendment

seizure, *see United States v. Wise*, 877 F.3d 209, 219 (5th Cir. 2017), it is not enough to establish custody under *Miranda*. *See Wright*, 777 F.3d at 774. Thus, Agent Carrillo's testimony that Escobedo-Gomez was not free to leave does not transform the brief detention into *Miranda* custody. That determination requires the Court to analyze the "totality of the circumstances." *Ortiz*, 781 F.3d at 229. Having done so, the Court finds he was not in custody.

Escobedo-Gomez argues that "[t]here can be no actual dispute that [he] was in custody when he first encountered the [BPAs]." Doc. 46, Mot., 4. But though he has the burden to show he was in custody, *see Webb*, 755 F.2d at 390, he offered no evidence in his Motion or at the suppression hearing to support this proposition. In his Motion and at the hearing, he identified and moved into evidence a fact sheet released in June 2018 describing a "zero tolerance policy" that directed "United States Attorneys on the Southwest Border to prosecute all amenable adults who illegally enter the country." *See* Doc. 46, Mot., 3 n.2.[2] He did not explain how this evidence supports suppressing his statements. Agents Carrillo and Martinez testified they were unaware of the policy. And despite the policy, Agent Carrillo testified that not every Form I-213 process turns into a prosecution.

B.   *Escobedo-Gomez Was Given His* Miranda *Warnings Before His I-867A Interview.*

Sometime after Escobedo-Gomez arrived at the station, he was read his *Miranda* rights and waived them. The Court determines that this occurred before he gave the interview that is recorded in Form I-867A, so any statements he made during the interview are not inadmissible. For the Government to use any statements made in custodial interrogation of a defendant, it must show he was warned of his right to remain silent, that his statements may be used as evidence against him, that "he has a right to the presence of an attorney," and that an attorney will be provided if he cannot

---

[2] *Fact Sheet*, Homeland Sec. (June 18, 2018) https://www.dhs.gov/archive/news/2018/06/15/fact-sheet-zero-tolerance-immigration-prosecutions-families (June 18, 2018).

afford one. *Miranda*, 384 U.S. at 444, 474. Then, the defendant must knowingly, voluntarily, and intelligently waive his rights. *Id.* at 444.

The Court finds that before giving his statement to Agent Martinez, which was recorded in Form I-867A, Escobedo-Gomez was given his *Miranda* rights. He then waived those rights by signing Form I-214. Agent Martinez testified that reading interviewees their *Miranda* warnings in Form I-214 is one of the first things that BPAs do during an intake. And though she did not author or sign Form I-214, she testified that before every interview, she would review the interviewee's file and ensure they had signed Form I-214, waiving their rights. She would also show each interviewee their signed Form I-214 before interviewing them to verify that they had signed it. If an interviewee had not signed the form, she would not interview them.

Agent Carrillo also testified that reading the *Miranda* warnings in Form I-214 is the first step after patting arrestees down and giving them food, water, and medical attention. He testified that this is the practice of every BPA and has been the Agency's practice throughout his 17 years as a BPA. Agent Martinez testified to nearly the same procedure, adding that they would weigh and fingerprint arrestees before giving them Form I-214. Both agents said arrestees consistently received and signed the Form I-214 *Miranda* warnings before they were interviewed. And Agent Carrillo said that there was no reason to believe that standard procedures were not followed here.

Escobedo-Gomez does not dispute that he was read his *Miranda* warnings. Instead, he only argues that it is unclear whether he received these warnings before he gave his interview. Doc. 46, Mot., 4. Based on the testimony above, which the Court found credible, the Court finds Escobedo-Gomez received his *Miranda* warnings before his interview.

C.      *The* Miranda *Warning Was Not Insufficient.*

Finally, the warning read to Escobedo-Gomez in Form I-214 was sufficient under *Miranda*.

When a defendant is warned of his right to counsel, *Miranda* only requires that he be informed he has a right to counsel before and during questioning, and that counsel will be appointed for him if he cannot afford it. *Duckworth v. Eagan*, 492 U.S. 195, 204 (1989). In *Eagan*, the warning was:

> *You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.* You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. *We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.*

*Id.* at 198 (emphasis in original) (quotations omitted). The Court of Appeals held that the warning was insufficient because it suggested that "only those . . . who can afford an attorney have the right to have one present before answering any questions," and that if "the government does not file charges, the accused is not entitled to [counsel] at all." *Id.* at 203. But the Supreme Court held the warning sufficient, explaining the warnings must only "reasonably convey to a suspect his rights as required by *Miranda*." *Id.* at 203 (citation omitted).

      Form I-214 provided Escobedo-Gomez with a sufficient warning of his right to counsel. The form translates the *Miranda* warning into Spanish. Agents Carrillo and Martinez both testified that they use Form I-214 with every arrestee whom they interview. Agent Martinez testified that she shows each arrestee Form I-214 before interviewing them. And before interviewing Escobedo-Gomez, she asked, "Do you have any questions?" Doc. 46-3, Ex. 3, 1. He responded, "No." *Id.* She then asked, "Do you wish to have a lawyer or any other person present to advise you?" *Id.* He responded, "No." This interaction shows that he understood his rights before giving his statement.

      Escobedo-Gomez argues that the *Miranda* warning in Form I-214 is vague because the literal translation is "if you don't have the money to hire an attorney, *one I can* provide one before any questioning." Doc. 46, Mot., 2 n.1. "The use of 'se le puedo' . . . makes it unclear whose responsibility it would be to provide counsel" and even "suggests that the onus" was on him. *Id.* The Court is

unpersuaded. Form I-213 reports that a BPA read the warning to him. It is unconvincing that if a government agent read to Escobedo-Gomez that "if you don't have the money to hire an attorney, *one I can* provide one before any questioning," Escobedo-Gomez would think that "I" referred to *himself*, when the *agent* was the one reading the rights. Even if Escobedo-Gomez read the warning to himself, the use of "*you*" as the person lacking money for an attorney, plus "*I*" as the one providing an attorney, would have clarified that the government, not Escobedo-Gomez, would provide an attorney if he could not afford one. Therefore, the *Miranda* warning was not insufficient, and his interview is not inadmissible.

## IV.

## CONCLUSION

For these reasons, Escobedo-Gomez's Motion to Suppress (Doc. 46) is **DENIED**.[3]

**SO ORDERED.**

**SIGNED:** November 4, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[3] At the end of the suppression hearing, Escobedo-Gomez's counsel objected to testimony about Form I-214, which contained the *Miranda* warnings, on Sixth Amendment grounds. Defense argued it violated the Confrontation Clause because the agent who read his rights from Form I-214 did not testify. This objection is overruled. The Confrontation Clause gives Escobedo-Gomez the right to confront any witnesses who made out-of-court, testimonial statements against him that the Government offers for their truth. *See United States v. Foreman*, 784 F.4th 615, 620 (5th Cir. 2023); *see also Crawford v. Washington*, 541 U.S. 36, 68 (2004). The only statement offered for its truth was Escobedo-Gomez's own statement that he made by signing Form I-214: that he understood his *Miranda* rights and waived them. The Court is unaware of any case finding Form I-214, or a defendant's waiver of *Miranda*, testimonial, nor has Escobedo-Gomez pointed to any.